STATE OF NORTH CAROLINA v. TERRY McCASKILL

No. 7910SC1161

(Filed 17 June 1980)

1. **Embezzlement § 5— references to defendant as "employee" – no invasion of province of jury**

In a prosecution for embezzlement in which defendant contended that he was an independent contractor, testimony referring to defendant as an "employee" of the State's witnesses did not invade the province of the jury since the embezzlement statute, G.S. 14-90, requires the establishment of an agency relationship; the question which determined the nature of the relationship between the defendant and the State's witnesses was the ownership of the money in question at the time it came into the hands of defendant; and the reference to defendant as an employee therefore did not infringe upon the jury's responsibility of determining whether defendant was an independent contractor.

2. **Embezzlement § 6— sufficiency of State's evidence**

The State's evidence was sufficient for the jury in a prosecution for embezzlement where it tended to show that defendant was to procure contracts with retail businesses for promotional services to be rendered by a firm owned by the State's witnesses; defendant was to receive money for such contracts, deliver the money to one State's witness, and receive a commission on the price, or, as later agreed upon, keep any money over a set price; and defendant did receive such money which he did not deliver to the State's witness.

3. **Criminal Law § 102 – permitting only one jury argument by defendant – no violation of statute**

The purpose of G.S. 84-14 was not to enlarge the number of addresses to the jury but was to limit the number of counsel and the time allowed a defendant's counsel in addressing the jury. Therefore, the trial court did not violate the statute in permitting a defendant who introduced evidence to present only one jury argument.

APPEAL by defendant from *Godwin, Judge*. Judgment entered 19 July 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 23 April 1980.

Defendant was indicted and tried for the felony of embezzlement (G.S. 14-90). The jury returned a verdict of guilty and from a judgment imposing a prison sentence, defendant appealed.

*Attorney General Edmisten by Special Deputy Attorney General Charles J. Murray, for the State.*

*Carlos W. Murray, Jr., for the defendant.*

MARTIN (Robert M.), Judge.

[1] Defendant contends the trial court erred in denying defendant's motion to strike the use of the word employment by the State's witnesses. In his arguments I through V defendant contends the references invaded the province of the jury in that whether the defendant was an employee of the State's witnesses was the ultimate question to be decided by the jury. Defendant contends that he was an independent contractor and complains of references to the defendant being an "employee" of Bill Meadors and Perry Walton.

Mr. Meadors testified that he is co-owner of Action Marketing and has been for two months. Prior to that he was President of Carolina Treasure Pak, Inc., a firm which handles promotional mailings for multiple merchants. In September 1978 he hired McCaskill as a sales representative for the Raleigh market of Carolina Treasure Pak, Inc. The following testimony forms the basis for defendant's first four exceptions:

Q. Did you have an oral or written agreement as to terms of employment?

A. Yes, ma'am.

Q. And what type of an agreement?

MR. MURRAY: Your Honor, I would object and move to strike to the use of the word "employment" in the question.

COURT: Overruled.

EXCEPTION NO. 1

Q. Did you have an oral or written agreement with regard to the employment?

A. Yes, ma'am.

Q. And what type of agreement did you have?

A. It was one of employer-employee relationship.

MR. MURRAY: Objection and move to strike.

COURT: The objection is overruled. Motion denied.

EXCEPTION NO. 2

COURT: Was the agreement a written agreement or a parol agreement, that is, a spoken agreement?

A. We had both, sir. We didn't get the written agreement established because the company was just getting off the ground and we wanted to see how the business flowed before we had —

COURT: Then should I understand that in the outset the agreement that you had with the defendant was not reduced to writing?

A. Yes, sir.

EXCEPTION NO. 3

Q. Mr. Meadors, did you have the power to terminate the defendant's employment at any time?

A. Yes, ma'am.

MR. MURRAY: Objection to the use of the word "employment."

COURT: Overruled.

MR. MURRAY: Move to strike.

COURT: Overruled.

EXCEPTION NO. 4

Under G.S. 14-90,

> If ... *any* ... *agent* of a corporation, or *any agent* ... of any person, shall embezzle or fraudulently or knowingly and wilfully ... convert to his own use ... any money ... belonging to any other person or corporation ... which shall have come into his possession or under his care, he shall be guilty of a felony, and shall be punished as in cases of larceny. (Emphasis added)

Defendant contends that he was an independent contractor and the relationship with Carolina Treasure Pak, Inc. was that of a debtor and creditor. Either status, he contends, would take him out of the embezzlement statute. Where an agency is not established, there cannot be a conviction based on that relation within the meaning of a statute prescribing a punishment for embezzlement. An independent contractor is not a servant or agent within the meaning of an embezzlement statute. 26 Am. Jur. 2d, Embezzlement § 26 (1966). Generally, when dealings between two persons create a relation of debtor and creditor, a failure of one of the parties to pay over money does not constitute the crime of embezzlement. Ordinarily, whether the relation of debtor-creditor exists depends upon the facts of the particular case. 26 Am. Jur. 2d, Embezzlement § 17 (1966); *Gray v. Bennett*, 250 N.C. 707, 110 S.E. 2d 324 (1959).

A review of the elements of the offense of embezzlement shows that it is the terms of the relationship that are important and not how the relationship is designated. "In the light of the provisions of this statute, as interpreted and applied by this Court, in order to convict a defendant of embezzlement, as declared in opinion by CLARK, C.J., in *S. v. Blackley, supra,* 'four distinct propositions of fact must be established: (1) that the defendant was the agent of the prosecutor, and (2) by the terms of his employment had received property of his principal; (3) that he received it in the course of his employment; and (4) knowing it was not his own, converted it to his own.' " *State v. Block*, 245 N.C. 661, 663, 97 S.E. 2d 243, 244 (1957), quoting *State v. Blackley*, 138 N.C. 620, 50 S.E. 2d 310 (1905). Since the term

"employee" is not used in G.S. 14-90, and because the Court refers to "four distinct propositions of fact," the term "employment" appearing in the second and third elements in *State v. Block, supra,* is used in its broadest sense and is not referring to a strict employee-employer relationship.

The question which determines the nature of the relationship between the defendant and the State's-witnesses is the ownership of the money at the time it came into the hands of the defendant. *Gray v. Bennett, supra.* Therefore, the reference to the defendant as an employee does not infringe upon the jury's responsibility of determining whether or not the defendant was an independent contractor. The court correctly denied defendant's motions to strike.

**[2]** Defendant contends the court erred in denying defendant's motions to dismiss. In ruling upon a motion to dismiss the evidence is viewed in the most favorable light for the State and contradictions and inconsistencies are ignored. *State v. McKinney,* 288 N.C. 113, 215 S.E. 2d 578 (1975).

The evidence of the State's witnesses showed that the defendant was to procure contracts with various retail businesses for promotional services to be rendered by the firm owned by the State's witnesses Meadors and Walton. The defendant was to receive the money to be delivered to Meadors and he, the defendant, was to receive a commission on the price, or as later agreed upon he was to keep any money over a set price. These terms indicate that the defendant was a sales agent who was to receive money on individual accounts which was to be delivered to the State's witnesses. Further prosecution evidence showed that the defendant did receive money for Meadors which he did not deliver. This evidence, if believed, is sufficient to establish each element of the offense of embezzlement and therefore the case was properly submitted to the jury.

**[3]** Defendant's eighth assignment of error presents the question whether the trial court properly denied the defendant two arguments to the jury. The defendant introduced evidence, the State waived the opening argument and argued after the defendant argued. At the conclusion of the District Attorney's clos-

ing argument, the defendant moved for permission to make an additional argument to the jury by virtue of the provisions of N.C.G.S. 15A-1230(b) and G.S. 84-14. The motion was denied. It has long been the practice in this State that when a defendant puts on evidence he loses his right to conclude the arguments to the jury. *State v. Curtis*, 18 N.C. App. 116, 196 S.E. 2d 278 (1973). Rule 10, General Rules of Practice for the Superior and District Courts Supplemental to the Rules of Civil Procedure pursuant to G.S. 7A-34.

Defendant argues that G.S. 84-14 clearly says that a defendant in a felony case less than capital has two addresses to the jury. He contends in this case the State, by waiving the opening argument, had two arguments while he had only one. The State, in its brief, contends that G.S. 84-14 provides for "two addresses to the jury," citing Rules 9 and 10 of the General Rules of Practice for the Superior and District Courts which provide for an opening statement and a closing argument. Thus, the State contends that allowing the defendant to make an opening statement prior to the introduction of evidence and a closing argument after the introduction of evidence meets the requirements of G.S. 84-14.

G.S. 15A-1230(b) provides: "Length, numbers, and order of arguments allotted to the parties are governed by G.S. 84-14." G.S. 84-14 provides as follows:

> Court's control of argument. — In all trials in the superior courts there shall be allowed two addresses to the jury for the State or plaintiff and two for the defendant, except in capital felonies, when there shall be no limit as to number. The judges of the superior court are authorized to limit the time of argument of counsel to the jury on the trial of actions, civil and criminal as follows: to not less than one hour on each side in misdemeanors and appeals from justices of the peace; to not less than two hours on each side in all other civil actions and in felonies less than capital; in capital felonies, the time of argument of counsel may not be limited otherwise than by consent, except that the court may limit the number of those who may address the jury to three counsel on each side. Where any greater number of addresses or any extension of time are desired, motion shall

State v. McCaskill

be made, and it shall be in the discretion of the judge to allow the same or not, as the interests of justice may require. In jury trials the whole case as well as law as of fact may be argued to the jury. (1903, c. 433; Rev., s. 216; C.S., s. 203; 1927, c. 52.)

We interpret G.S. 84-14 by reviewing the history of this legislation. An early statute rendered it unlawful for either party to employ more than one attorney to speak in a suit, and the courts were "directed not to suffer more than one attorney ..." to plead for either party.[1] Thereafter, a law was enacted allowing plaintiff or defendant to employ several attorneys in his case, but not more than one could speak unless allowed by the court.[2]

In *State v. Collins*, 70 N.C. 241 (1874) the court restricted the prisoner's counsel to one hour and a half in addressing the jury, allowing two of the counsel to divide the time between them. The Supreme Court held that it was a power vested in the presiding judge, and that they could not control its exercise. Following this case a statute was enacted giving counsel in civil and criminal cases the right to address the court or jury for such space of time as in his opinion may be necessary for the proper development and presentation of his case.[3]

[1] Revised Statutes of North Carolina ch. 31, § 62, para. 15 (1836-37).

It shall not be lawful for either plaintiff or defendant to employ, in any matter or suit, more than one attorney to speak in such matter or suit in court, and the courts in this State are hereby directed not to suffer more than one attorney as aforesaid, in any matters whatever, to plead for either plaintiff or defendant to any suit, under penalty of a violation of this section.

[2] Revised Code of North Carolina ch. 31, § 57, para. 15 (1855).

The plaintiff or defendant may employ several attorneys in his case, but more than one shall not speak thereto, unless allowed by the court; and in jury trials they may argue to the jury the whole case, as well of law as of fact.

[3] Code of North Carolina v. 1, ch. 4, § 30 (1883).

Any attorney appearing in any civil or criminal action shall be entitled to address the court or the jury for such a space of time as in his opinion may be necessary for the proper development and presentation of his case; and in jury trials he may argue to the jury the whole case as well of law as of fact.

In *State v. Miller*, 75 N.C. 73 (1876), the defendant was represented by three counsel. One of the counsel addressed the jury and at the conclusion of his remarks another of the counsel arose and stated to the court that in order to make a proper presentation of the defendant's case it was necessary that another of the counsel should address the jury, and asked permission to do so. The court refused to hear the counsel. Defendant excepted and the Supreme Court awarded a new trial. The court reviewed the progression of the statutory law. "First, that everyone charged with crime shall be entitled to counsel; but nothing is said about the number. Secondly, we have an act ... allowing him to have as many as he pleases, with the power in the presiding judge to limit the speaking to one; and thirdly, the late act which allows *any* of his counsel appearing in the case to speak as long as *he* pleases." In this case the court observed that the trial judge "thought ... that he would do indirectly what the act prohibited from being done directly — limit the *time* by limiting the *number*." The court reasoned that the action of the judge was to save the time of the court. "And *that* the Legislature has said he shall not do, so as to deprive any counsel appearing of the right to speak as long as he pleases."

Thus, from the progression of the aforementioned legislation, it is apparent that the purpose of G.S. 84-14 was not to enlarge the number of addresses but rather a limitation on the number of counsel and time allowed a defendant's counsel in addressing the jury. We note the statute gives the court the discretion to allow a greater number of addresses.

We have carefully reviewed defendant's remaining assignments of error and found them to be without merit. In the trial we find no prejudicial error.

No error.

Judges WEBB and HILL concur.